UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOAN TONI LAWRENCE,

                                                                                    DECISION AND ORDER
                                        Plaintiff,

                                                                                    19-CV-6167L

                         v.


ANDREW SAUL,
Commissioner of Social Security,

                                        Defendant.

_____


        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security

("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the

Commissioner's final determination.

        On December 8, 2015, plaintiff, then fifty-two years old, filed an application for a period

of disability and disability insurance benefits, alleging disability as of November 6, 2006, later

amended to January 24, 2013. (Administrative Transcript, Dkt. #5-2 at 16, 18). Her application

was initially denied. Plaintiff requested a hearing, which was held January 8, 2018 via

videoconference before Administrative Law Judge ("ALJ") Patricia M. French. The ALJ issued

an unfavorable decision on February 22, 2018. (Dkt. #5-2 at 16-28).That decision became the final

decision of the Commissioner when the Appeals Council denied review on January 9, 2019. (Dkt.

#5-2 at 1-3). Plaintiff now appeals.

        The plaintiff has moved for remand of the matter for further proceedings (Dkt. #9), and the

Commissioner has cross moved (Dkt. #13) for judgment on the pleadings, pursuant to Fed. R. Civ.

Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, primarily related to treatment for an L4-L5 lumbar spinal disc bulge, facet arthropathy (degenerative arthritis) at lower lumbar levels, osteoarthritis of the right knee, bilateral shoulder impairments (right shoulder impingement syndrome, right shoulder arthroscopy), and right carpal tunnel syndrome, which the ALJ determined together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #5-2 at 19).

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, but cannot lift or carry more than 20 pounds. Plaintiff can sit, stand or walk for up to an hour before changing position, can frequently engage in fingering, handling and grabbing, and can no more than occasionally reach overhead with either arm. Plaintiff can no more than occasionally use stairs and ramps, should never navigate ladders, ropes, or scaffolds, and can never be exposed to temperature or humidity extremes. (Dkt. #5-2 at 20).

At the hearing, vocational expert Larry Takki testified that a hypothetical individual with this RFC could not return to plaintiff's past relevant work, which had been a composite position

which included simultaneously performing the functions of an assembler, packer and forklift operator at the medium exertional level. Such a person could, however, perform the representative light, unskilled positions of price marker, subassembler of electronics, and ticket seller. (Dkt. #5-2 at 27, 148-51). The ALJ accordingly found plaintiff not disabled.

## I.    The Medical Opinions of Record

In assessing plaintiff's RFC, the ALJ's decision specifically discussed and weighed the medical opinions of record. First, the ALJ opted to give "no" weight to the opinion of the Social Security Administration's single decision maker (a non-physician disability analyst), and "great" weight to the opinion of a consulting psychologist, whose opinion that plaintiff did not have a medically determinable mental impairment was well-supported by the record. Plaintiff does not challenge the ALJ's weighing of these opinions, and I find no error therein.

With respect to the ALJ's analysis of the opinions of treating and examining physicians concerning plaintiff's exertional limitations, however, the Court reaches a different conclusion.

The ALJ first accorded "little" weight to the October 16, 2015 opinion of plaintiff's treating orthopedist, Dr. Terrance Daino. (Dkt. #5-2 at 26). Dr. Daino opined that plaintiff's right knee impairments required her to "limit" stair climbing, and to engage in no kneeling, bending, stooping, or use of ladders. (Dkt. #5-7 at 652, 690). The ALJ declined to credit the bulk of these limitations, noting that the opinion was written one year after the plaintiff's "date last insured," and was inconsistent with unspecified "progress notes" from the period which allegedly showed "good response to conservative treatment," mainly medications and physical therapy. (Dkt. #5-2 at 26).

The ALJ similarly gave "little" weight to a 2-sentence opinion authored November 17, 2015 by plaintiff's treating cardiologist, Dr. Natarajan. (Dkt. #5-7 at 704). Dr. Natarajan opined

that "[d]ue to medical reasons [plaintiff] cannot stand on her feet for more than 15 minutes at a time" and "should have access to water and food throughout the day." *Id*. The ALJ rejected these limitations, finding them unsupported by "objective medical evidence," and observing that plaintiff had not "shown that in a work environment, access to food and water during regular morning, lunch and afternoon work breaks would be somehow insufficient." (Dkt. #5-2 at 26).

Finally, the ALJ gave "partial" weight to the opinion of plaintiff's treating orthopedic surgeon, Dr. Peter Capicotto. While the ALJ observed that Dr. Capicotto's opinion was "not accompanied by explanation" and that MRI evidence from the period showed "mild to moderate findings," the ALJ nonetheless found that the limitations Dr. Capicotto listed were "reasonably supported," and averred that they had "been incorporated into the residual functional capacity." (Dkt. #5-2 at 26).

Plaintiff points out that the ALJ appears to have overlooked additional medical opinions of record, chiefly a March 1, 2016 opinion from plaintiff's treating internist, Dr. Sarah Nemetz. Plaintiff argues that the ALJ's assessment of the medical opinions of record was erroneous and incomplete, and that remand is therefore necessary. The Court concurs.

Initially, the ALJ erred in failing to properly apply the treating physician rule to the opinions of Dr. Capicotto, Dr. Daino and/or Dr. Natarajan.

In general, the opinion of a claimant's treating physician as to the nature and severity of her impairments is entitled to "'controlling weight' so long as it 'is well-supported . . . and is not inconsistent with the other substantial evidence in the case record.'" *Gough v. Saul*, 2020 U.S. App. LEXIS 949 at *2-*3 (2d Cir. 2020) (unpublished opinion) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). *See also Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). In determining whether to give controlling weight to the opinion of a treating physician, factors to be

considered by the ALJ include: (1) the nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. § 404.1527(c).

In addition, the ALJ must articulate her reasons for assigning the weight she gives to a treating physician's opinion. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). An ALJ's failure to apply the treating physician rule factors and to give good reasons for declining to grant controlling weight is reversible error. *Id.*, 177 F.3d 128 at 134.

Here, although the ALJ identified plaintiff's treating physicians as such, the ALJ engaged in no discussion of the length or frequency of treatment, or the relevance of each physician's specialty to their opinion. Furthermore, the ALJ's reasons for declining to credit the opinions of Dr. Daino, Dr. Capicotto and Dr. Natarajan were inadequate and inconsistent. For example, the ALJ rejected Dr. Daino's October 16, 2015 opinion for having been authored a year after plaintiff's date last insured, while granting greater weight to Dr. Capicotto's opinion, which was written just two weeks earlier. (Dkt. #5-2 at 26).

It is clear from the record that Dr. Daino began treating plaintiff several years prior to the date last insured, although the focus of treatment did shift over time from plaintiff's right hand, to her bilateral shoulders, to her right shoulder, to her right knee. S*ee e.g.*, Dkt. #5-8 at 896-929 (progress notes from Dr. Daino dated in and after 2007, identifying plaintiff as a "long term patient" and describing multiple unsuccessful surgical procedures on her right shoulder). As such, if the ALJ was unsure whether Dr. Daino's October 16, 2015 opinion applied retrospectively to the entire period under review, she should have re-contacted him for clarification. *See Bender v. Astrue*, 2010 U.S. Dist. LEXIS 132637 at *18-*19 (N.D.N.Y. 2010) (collecting cases, and finding

that where an ALJ rejects treating physician opinions as irrelevant based solely on the fact that they were rendered after the date last insured, "remand is required for further development of the record and reconsideration of the treating physicians' assessments," including re-contacting the physicians for clarification as to the time period being assessed). *See generally Kudrick v. Commissioner*, 2020 U.S. Dist. LEXIS 97667 at *21-*22 (W.D.N.Y. 2020) ("information provided after the date last insured should be considered to the extent it sheds light on the [p]laintiff's condition as of the relevant time period")(quoting *Shook v. Commissioner*, 2013 U.S. Dist. LEXIS 44731 at *17 (N.D.N.Y. 2013).

Furthermore, the ALJ found Dr. Daino's and Dr. Capicotto's opinions to be inconsistent with evidence of "conservative treatment," while apparently ignoring the medical evidence of record that plaintiff's complaints of shoulder, back and knee pain persisted even after treatment and knee surgery, and were supported by imaging studies showing degenerative and/or arthritic changes and later, observations of gait abnormalities (limping). The opinion of a treating physician cannot be "discounted merely because he has recommended a conservative treatment regimen," and as such, the ALJ's rejection of Dr. Daino's and Dr. Capicotto's opinions on that basis was improper, particularly in light of the evidence that plaintiff's pain symptoms were ill-managed despite treatment. *Burgess*, 537 F.3d 117 at 129. *See also Corona v. Berryhill*, 2017 U.S. Dist. LEXIS 43172 at *47 n.31 (E.D.N.Y. 2017) ("on remand, the ALJ should not discount [a treating physician's] opinion only because his course of treatment is conservative"). The ALJ also rejected Dr. Natarajan's opinion that plaintiff could not stand for more than 15 minutes at a time and required constant access to food and water during the workday as "unsupported," even though plaintiff's treatment records with Dr. Natarajan reflected a diagnosis of recurrent syncope (fainting), of which hunger and dehydration are generally acknowledged to be potential causes.

In sum, the ALJ characterized the record as inconsistent with Dr. Capicotto's, Dr. Natarajan's and Dr. Daino's opinions. Because that characterization was erroneous as set forth above, the opinions' alleged inconsistency with the record was not a "good" reason for the ALJ to have rejected them.

Second, the ALJ purported to have incorporated the limitations opined by Dr. Capicotto into her RFC finding (stating that "the limitations assessed are reasonably supported and have been incorporated into the [RFC]"), but did not do so. (Dkt. #5-1 at 26). For example, Dr. Capicotto opined that plaintiff could not engage in repetitive bending or twisting, but the ALJ included no limitations on either activity in her RFC finding. While an ALJ is not required to adopt any medical opinion in its entirety, to the extent that the ALJ implicitly rejected some of the limitations described by Dr. Capicotto despite claiming to have credited them, the ALJ did not set forth her reasoning for doing so. As such, it is impossible for the Court to determine whether her reasons for declining to fully credit these portions of Dr. Capicotto's opinion were "good reasons," or whether the failure to include all of the limitations Dr. Capicotto identified into the RFC determination was simply the result of an innocent mistake. This, too, is reversible error. *See, e.g.*, *Garcia v. Berryhill*, 2018 U.S. Dist. LEXIS 194203 at *31 (S.D.N.Y. 2018) ("the ALJ erred by failing – without explanation – to incorporate the limitations described by [a physician whose opinion was given 'great' weight]" into plaintiff's RFC); *Raymer v. Colvin*, 2015 U.S. Dist. LEXIS 112218 at *20 (W.D.N.Y. 2015) (remand is appropriate where ALJ fails to explain why portions of a credited opinion were not adopted into the ALJ's RFC finding).

Finally, the ALJ erred in failing to evaluate the opinion of Dr. Nemetz. The SSA's regulations require an ALJ to "evaluate every medical opinion [he or she] receives." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd,* 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R.

§§ 404.1527(c), 416.927(c). Unless a treating source's opinion is given controlling weight, the ALJ must weigh every opinion of record, considering several relevant factors. See 20 C.F.R. §§404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The ALJ's decision cites the exhibit number containing the March 1, 2016 opinion of plaintiff's longstanding treating internist Dr. Nemetz, and specifically references Dr. Nemetz's treatment notes, which included summaries of the opinions and treatment records of some of plaintiff's *other* treating physicians. (Dkt. #5-2 at 26, #5-9 at 1106-08, 1109). However, the ALJ did not specifically discuss or weigh Dr. Nemetz's opinion on its own merits, or consider the several work-related exertional limitations assessed or endorsed by Dr. Nemetz, which appear to have been intended to account globally for plaintiff's collective knee, shoulder and back issues. This error is not harmless, as Dr. Nemetz's opinion specifies limitations which exceed those included by the ALJ in her RFC finding. For example, Dr. Nemetz stated that plaintiff could lift nothing higher than chest level, could not repetitively push, bend or twist, could not stand still on her feet for more than 15 minutes at a time, could not reach overhead, was unable to kneel, bend or stoop, and required access to food and water throughout the day. (Dkt. #5-9 at 1109).[1]

For the foregoing reasons, remand is necessary for the ALJ to reassess the medical opinions of record with due deference to the treating physician rule, and to ensure that no material evidence

---

[1] Plaintiff also argues that the ALJ overlooked two additional "opinions" by Dr. Daino. Specifically, in February 2017 and June 201, Dr. Daino completed forms to assist plaintiff with obtaining a handicapped parking pass and a disability-related student loan discharge. On those forms, he indicated, among other things, that plaintiff could not sit or stand for "great lengths," that her ability to walk was limited, that she walked with a limp, and that she was unable to climb stairs. (Dkt. #5-6 at 367-69). While these forms did not purport to offer a comprehensive evaluation of plaintiff's limitations, to the extent that they attempt to assess plaintiff's ability to perform a few of the functions associated with work activity, such as ambulating and climbing stairs, they are opinions relevant to plaintiff's RFC and should have been considered by the ALJ. *See Russell v. Saul*, 2020 U.S. Dist. LEXIS *52518 at *18-*19 (D. Conn. 2020) (a medical source's statement need not include a complete function-by-function-analysis in order to be considered a medical opinion: Social Security regulations "sweep broadly, defining medical opinions as reflecting judgments about the nature not just of what a claimant can functionally do, but also symptoms, diagnosis[,] and prognosis") (quotation marks and citation omitted). On remand, the ALJ is instructed to consider and include them in her analysis.

of record has been overlooked. Having found that the ALJ erred in her analysis of the medical

opinions of record, the Court declines to address plaintiff's alternative arguments.


## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the

matter (Dkt. #9) is granted, and the Commissioner's cross motion for judgment on the pleadings

(Dkt. #13) is denied. The ALJ's decision is reversed and remanded, and the ALJ is instructed to

render a new decision which discusses all of the medical opinion evidence of record with respect

to plaintiff's exertional limitations.

Such discussion should include reevaluation of the opinions of plaintiff's treating

physicians concerning her exertional capacity (to include re-contacting of those physicians for

clarification and more detailed function-by-function analyses if and as necessary), with due

deference to the treating physician rule and a detailed discussion of all of the factors relevant to

the consideration and weighing of medical opinion evidence.

IT IS SO ORDERED.


                                   _____

                                       DAVID G. LARIMER
                              United States District Judge

Dated: Rochester, New York
          September 11, 2020.